### CLARK v. THAYER.

(Supreme Court, Appellate Division, Second Department. February 19, 1897.)

1. YACHT CLUB—RULES—CONFLICT WITH RULES OF NAVIGATION.
   The rule of the New York Yacht Club relative to racing, requiring yachts not in the race to keep to leeward, applies for such a reasonable distance beyond the finish line as will enable a racing yacht to carry sail and keep her course up to the finish line.

2. SAME—REASONABLE DISTANCE—PROVINCE OF JURY.
   The question was for the jury whether plaintiff's yacht, which had been run into and injured by defendant's yacht, was within the limit of distance to which the rule of the yacht club would apply, or so far from the finish line as to be governed in its management by the ordinary rules of navigation.

Appeal from trial term, New York county.

Transferred from the First department.

Action by Charles C. Clark against Bayard Thayer for personal injuries due to a collision between defendant's and plaintiff's yachts. From an order setting aside a verdict in favor of plaintiff, and granting a new trial, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

George Richards, for appellant.

Peter B. Olney, for respondent.

PER CURIAM. This action is brought to recover damages for injuries to the plaintiff's person, and also to his property, caused by a collision between defendant's yacht and that of the plaintiff, in Newport Harbor. Both yachts were in the fleet of the New York

Yacht Club on its annual cruise. On the cruise there appear to have been races from harbor to harbor for such vessels of the fleet as the owners might choose to enter. The run was from New London to Newport Harbor. There were some 90 or 100 vessels in the fleet, of which some 30-odd entered the race between those two points. The goal of the race was an imaginary line between the stake boat in the entrance to Newport Harbor and a point on the shore. Defendant's yacht competed in the race. That of the plaintiff did not. The collision took place in Newport Harbor, beyond the finish line of the race. How far beyond that line the accident happened involves the most serious conflict of fact in the case. The plaintiff's yacht was in advance of that of the defendant, so that the defendant's yacht was an "overtaking vessel." Both yachts were running free, with the wind on the same side. The plaintiff's yacht was to the leeward. It was, therefore, the duty of the defendant's yacht, under the rules of navigation enacted by congress, to keep out of the way of the plaintiff's yacht, except for the application of a rule of the club. This rule is as follows: "Yachts not in Races. All yachts not racing must be kept to leeward, and out of the way of racing yachts." We think this rule bound the plaintiff, as a member of the club, and so the trial court properly held. We think it also clear that this rule applied, not only to the course from start to finish, but for a reasonable distance after the finish. But from the finish line the club rule did not apply with the same force as it did to the course of the race itself. Of course, the object of the race was to test the speed of the boats. To be a fair test, it was requisite that the competing vessels should not be subject to unnecessary obstruction. For this purpose the rule was that the nonracing yachts should keep out of the way. It was equally requisite that they should not be in front of the finish line in such position as to compel the racing yachts to change their course while in the race, or prevent such yachts from using all their sail. But if the racing yacht held its course to the finish line, we think from that point it was its duty to observe the regular rules of navigation, so far as its speed, position, and the condition of its sails permitted. As already stated, the testimony as to the place where the accident happened, with reference to the finish line, was very contradictory. The learned trial court charged the jury that, while the navigation laws of the United States were imperative, they could be waived by persons who were willing to waive them, and therefore that the rule of the yacht club, as to its members, governed. It also charged that the rule not only applied over the course itself, but for a reasonable distance after crossing the finish line, to enable the racing yachts to shorten sail, and get rid of canvas; that, if the accident occurred within this reasonable distance, and the plaintiff had not explained why he was there, then he was guilty of negligence which contributed to the injury, and precluded a recovery; that if, however, he was beyond that limit, then he was subject to the rules of navigation as established by the act of congress, and it was incumbent for the defendant to explain, if he could, how it was that he overtook and ran into or collided with the plaintiff's vessel. We think this was a perfectly fair and en-

tirely accurate statement of the law applicable to the subject. Certainly, the defendant had no reason to complain of it, nor did he complain. Under this charge the jury found a verdict in favor of the plaintiff for $4,500 damages for injury to his person and $450 damages for injuries to his yacht. Subsequently, on a motion for a new trial, the verdict was set aside as against the weight of evidence, and also because the evidence did not justify the amount allowed for injuries to the yacht.

We have examined the exhaustive opinion delivered by the trial judge, granting a new trial, but it has failed to satisfy us that the verdict was so manifestly against the evidence as to justify the court in setting it aside. We think there was a clear-cut question of fact to be determined by the jury. As already said, we think the defendant's yacht, up to the finish line, had the right to keep her course absolutely, without deviation on account of the plaintiff's boat; and also to carry every yard of canvas that was thought advantageous. If it was certain that from so holding her course, or from the sail she carried, the collision with the plaintiff's boat had been caused, we would be clear that the plaintiff was at fault, and could not recover. But, after the finish line was passed, then it was the duty of the defendant's yacht to observe the ordinary rules of navigation, so far as her speed, position, and condition and the surrounding circumstances permittted. She was, therefore, bound to keep away from the plaintiff's boat, if that were practicable. Whether it was practicable or not was a fairly debatable question, on the evidence in this case. So, also, on the question of the plaintiff's contributory negligence. If the circumstances were such that the defendant's yacht could have borne away, the master of the plaintiff's boat was justified in holding his course, and assuming the defendant's boat would comply with the rules of navigation; for at that time the existence of the race had no bearing on the maneuvering of defendant's yacht. The race had been won or lost already. There was, at the time of the collision, no reason why the racing yacht should have the superior right of way over the nonracing yacht; a right of way denied to it both by the act of congress, and also by the ordinary navigation rules of the club. The race had this effect, and this only: it had brought the defendant's yacht to the position that it occupied, carrying all sail; but on the evidence the jury could have found that it was not the position of the defendant's yacht, nor the sail she carried, but her failure to bear away, which caused the injury. Indeed, the questions of the plaintiff's contributory negligence and the defendant's negligence are so interwoven as to be difficult of separation. We think on both there was a fair dispute of fact for the jury to decide.

The plaintiff has offered to remit that part of the verdict which awards him compensation for the injury to his boat. This offer removes from the case the question of the sufficiency of the evidence to justify the verdict in this respect.

The order granting motion for a new trial should be reversed, without costs, on plaintiff stipulating to deduct from the verdict the sum of $450.